IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IMAN ANDERSON, *et al.*, | ) |
|    Plaintiffs, | ) ) ) |
| v. | ) ) Case No. 1:22-cv-652-RAH ) |
| IMANI LOUNGE, LLC, *et al.*, | ) ) |
|    Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs' *Motion to Enforce and Approve FLSA Collective Action Settlement*. (Doc. 72.) The Defendants have not filed a response to the motion and the time for doing so has elapsed. Nor did the Defendants attend the hearing on the motion. After careful consideration of the motion, the record, and for the reasons discussed below, Plaintiffs' motion is due to be **GRANTED in part.**

I.    **BACKGROUND**

On November 8, 2022, Plaintiffs filed this lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (FLSA), to recover for uncompensated work they performed as dancers at Defendant Imani Lounge, LLC ("Imani Lounge"), an adult entertainment club in Dothan, Alabama. Imani Lounge is owned by Defendant Michael Conway. (Doc. 22 at ¶¶ 1, 13, 16, 18.)

On December 18, 2023, the parties mediated the case before United States Magistrate Judge Kelly F. Pate. (*See* doc. 69.) The parties reached a settlement of their disputes and recited the essential financial terms to Judge Pate on the record. Among others, Plaintiffs' counsel read into the record that damages, inclusive of wages and liquidated damages, would be resolved for a total of $45,000 and that the

1

settlement amount would be paid out over a period of two years, with an initial payment of $15,000 due within 30 days of the Court's approval of the settlement; a second payment of $15,000 due within a year; and a final payment of $15,000 due within two years. (Doc. 72-1 at 7:13–8:11.) Defendants' counsel confirmed these terms and clarified that the settlement was between Plaintiffs and Defendant Imani Lounge, and that Defendant Conway would be released as part of the agreement. (*Id.* at 8:12–21.) Counsel for all parties, and the Defendants themselves, confirmed on the record that those terms were accurate and acceptable. (*Id.* at 8:22–10:3.)

On December 19, 2023, the parties, through counsel, separately negotiated an amount for Plaintiffs' attorneys' fees. The parties reached a separate agreement of $15,000 for attorneys' fees and agreed to increase the three disbursements from $15,000 to $20,000 each. (Doc. 72-2.) On December 21, 2023, Defendants' counsel sent Plaintiffs' counsel a redlined draft of a formal settlement agreement, with a note for Plaintiffs' counsel to add the distribution of the structured payments in an appendix. (Docs. 72-3; 72-4.)

On January 18, 2024, the parties jointly notified the Court that a settlement had been reached with the assistance of Judge Pate and further that they were finalizing the paperwork. (Doc. 58.) On January 19, 2024, Plaintiffs' counsel sent Defendants' counsel an updated and redlined draft of the formal settlement agreement, the appendix for the distribution of the settlement payments, and a draft consent judgment. (Docs. 72-5; 72-6; 72-7; 72-8.) Defendants' counsel responded on January 29, stating that he had a couple questions regarding the draft, but "[o]therwise, it looks pretty good." (Doc. 72-9.) Plaintiffs' counsel responded, answering Defendants' counsel's questions, who then replied stating that it "[a]ll looks good to me." (Doc. 72-9.) Plaintiffs' counsel and Defendants' counsel then agreed to start obtaining the relevant signature and tax documents from the parties. (Doc. 72-9.)

On February 8, 2024, Plaintiffs' counsel sent Defendants' counsel copies of Plaintiffs' signed agreements, as well as most of the related tax forms. (Docs. 72-10; 72-11.) After hearing nothing from Defendants' counsel, Plaintiffs' counsel inquired about the status of Defendants' signatures. (Doc. 72-12.) Defendants' counsel responded, stating that he "w[ould] check with him today and get that back." (Doc. 72-12.)

On February 21, 2024, the Plaintiffs filed a status report stating that Plaintiffs had signed the settlement agreement and that Defendants had not signed the agreement. (Doc. 60.) Finally, on February 28, 2024, Defendants' counsel informed Plaintiffs' counsel that the Defendants would not sign the settlement agreement because they could not make the initial settlement payment on time. (Doc. 72-13.) Defendants did not otherwise dispute any term or condition of the settlement or settlement agreement.

On April 18, 2024, the Plaintiffs filed a motion to enforce and approve the settlement. (Doc. 72.) Defendants' counsel withdrew from the case shortly thereafter on April 25, 2024. (Doc. 76.) Defendants, proceeding *pro se*, were ordered to show cause why the motion should not be granted and were further informed that an in-person hearing regarding the motion was set for June 11, 2024. (*Id.*) Defendants filed nothing in response and did not attend the hearing on June 11, 2024.

## II. DISCUSSION

### A. Enforceability of the Settlement

By virtue of its inherent power, a district court may "summarily enforce settlement agreements entered into by parties [] in a pending case." *Ford v. Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991) (citation and quotation omitted). "In general, the law of contracts governs the construction and

enforcement of settlement agreements," and the court refers "to state law principles when reviewing the scope of an attorney's authority to enter into a settlement agreement." *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999).

In Alabama, "the basic elements of a contract are an offer and an acceptance, consideration, and mutual asset to the essential terms of the agreement." *Hardy v. City of Selma*, Case No. 2:21-cv-552-TFM-B, 2023 WL 8280483, at *9 (S.D. Ala. June 9, 2023) (quoting *Sirote & Permutt, P.C. v. Caldwell*, 293 So. 3d 867, 873 (Ala. 2019)). In determining whether there is mutual assent, there must be a meeting of the minds that "is determined by reference to the reasonable meaning of the parties' external and objective actions." *McCurdy v. Auburn Univ.*, Case No. 3:14-cv-226-MHT, 2015 WL 9582723, at *2 (M.D. Ala. Dec. 30, 2015) (quoting *Allen v. Allen*, 903 So. 2d 835, 840 (Ala. Civ. App. 2004) (internal citations omitted)).

"Under Alabama law, an attorney has the authority to bind his client by a settlement agreement if it is reduced to writing or put on the minutes of a court proceeding." *Id.* (citing Ala. Code § 34-3-21) (other citations omitted). A settlement agreement need not be signed by the party to be enforceable. *Spurlock v. Pioneer Fin. Servs., Inc.*, 808 F. Supp. 782, 783 n.2 (M.D. Ala. 1992) ("The Alabama Supreme Court has several times enforced a settlement agreement against a party when the agreement was entered into by the party's attorney and was not signed by the party." (internal citation omitted)). "[I]f sufficiently detailed, an exchange of correspondence may create an enforceable contract under Alabama law." *Walters v. Jackson Hosp.*, Case No. 2:21-cv-204-MHT, 2022 WL 2531751, at *3 (M.D. Ala. July 7, 2022) (citing *Mays v. Julian LeCraw & Co.*, 807 So. 2d 551 (Ala. Civ. App. 2001)).

Stipulations of settlement made in open court "should be as binding as a written contract; indeed, it is a contract[,] but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of

court." *United States v. Stabler*, Case No. 06-050-CB-C, 2008 WL 5245353, at *6 (S.D. Ala. Dec. 2, 2008) (alteration in original) (quoting *Ingalls Iron Works Co. v. Ingalls*, 177 F. Supp. 151, 160 (N.D. Ala. 1959) (internal citation omitted)). "An agreement, even an oral one, will not automatically be considered non-binding merely because a later, more formal document was envisioned." *Mims v. Bogan*, Case No. 1:12-cv-887-MHT, 2015 WL 4605700, at *2 (M.D. Ala. July 30, 2015) (quoting *Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrushionstechnik GMBH*, 718 F. Supp. 886, 892 (M.D. Ala. 1989)). And under Alabama law, a "settlement agreement, however, may not be repudiated and will be enforced by the courts. . . . 'A settlement agreement will be reopened only for accident, mistake, or fraud.'" *Jackson v. Con-Way Transp. Servs., Inc.*, 222 F. App'x 887, 891 (11th Cir. 2007) (per curiam) (quoting *Coaker v. Washington Cnty. Bd. of Educ.*, 646 So. 2d 38, 41–42 (Ala. Civ. App. 1993) (citations omitted)).

Federal law only requires that settlement agreements "be entered into voluntarily and knowingly[.]" *McCurdy*, 2015 WL 9582723, at *3 (internal quotations and citations omitted). "[F]ederal contract law is largely indistinguishable from general contract principles under state common law." *Walters*, 2022 WL 2531751, at *4 (internal quotation marks and citations omitted). "It is a bedroom principle of contract law that an enforceable contract is not formed unless there is a meeting of the minds as to all essential terms." *Id.* (citing *In re Deepwater Horizon*, 786 F.3d 344, 357 (5th Cir. 2015)). "'Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that parties also manifest an intention to prepare and adopt a written memorial thereof; but the circumstances may show that the agreements are preliminary negotiations.'" *Mims*, 2015 WL 4605700, at *2 (quoting Restatement (Second) of Contracts § 27 (1981)).

A binding settlement existed on December 18, 2023, when the parties read the essential terms of their agreement into the record before Judge Pate.  This agreement was entered into voluntarily and knowingly by the parties, who each confirmed that the agreement, as it was read into the record, was accurate and acceptable.  (Doc. 72-1 at 9:9–10:2.)  *See McCurdy*, 2015 WL 9582723, at *3; *Stabler*, 2008 WL 5245353, at *6.  Then, another agreement (a side agreement) was made between Plaintiffs and Defendants' counsel for attorneys' fees, as is customary in FLSA cases. (*See* doc. 72-9.)   None of the terms of the settlement have been disputed by the Defendants.   Instead, the only concern voiced by the Defendants has been their ability to meet the financial obligations of the settlement.

It is immaterial whether Defendants can make the agreed-upon settlement payments because Defendants are bound by the agreed-upon terms.  The Defendants, on the record, agreed to pay $45,000 to the Plaintiffs to settle their FLSA claims under a three-payment structure.  Then, Defendants' counsel agreed to an additional $15,000 in attorneys' fees to Plaintiffs' counsel that was incorporated into the three-payment structure.  The failure to sign the formalized settlement agreement does not prevent this Court from enforcing such an agreement, absent accident, mistake, or fraud.  *Jackson*, 222 F. App'x at 891.  And no such allegation of accident, mistake, or fraud has been raised by the parties, nor does the record reflect any.

Therefore, the Court finds that a valid, enforceable agreement, subject to the Court's approval, exists on the following financial terms:[1]

1. That Defendant Imani Lounge LLC agreed to pay Plaintiffs and Plaintiffs' counsel the total sum of **$60,000.00 ($45,000 plus $15,000 for attorneys'**

---

[1] The financial terms should not be construed as the *only* terms of the settlement.  The mutually-agreeable settlement agreement is available on the docket under Documents 72-11 (agreement) and 72-8 (appendix detailing specific payment amounts by plaintiff), and it represents the complete agreement that is binding on the parties.

**fees)**, with Defendant Imani Lounge making the initial payment of $20,000 within thirty days of the Court's approval of the settlement, and additional payments of $20,000 one year and two years thereafter.

2. And that in the event that Defendant Imani Lounge failed to timely make any payment in accordance with the payment structure, all remaining payments could be accelerated and that the Plaintiffs could immediately obtain a consent judgment from the Court for all amounts that remained outstanding.

### B. Fairness and Approval of Settlement

Now that the Court has found a valid, enforceable settlement between the parties, and, since this is an FLSA case, the Court must approve or disapprove the fairness of the settlement. The FLSA requires that, in the context of a private suit brought by an employee against an employer, the employee may settle and release FLSA claims if the parties present the court with a proposed settlement, and the court enters a stipulated judgment approving the fairness of the settlement. *Lynn's Food Stores, Inc. v. United States By and Through U.S. Dep't of Lab., Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1353 (11th Cir. 1982); *see also* 29 U.S.C. § 216(c). The Court has a duty to scrutinize the proposed settlement for fairness. *Gordon v. Enter. Holdings*, 2:20-cv-996-ECM, 2022 WL 757931, at *1 (M.D. Ala. Mar. 11, 2022). A settlement is fair when it is a "reasonable compromise" or a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1354–55.

Upon a review of the proposed settlement, the Court finds that the parties have reached an agreement based on a negotiated, reasonable compromise of a bona fide dispute over Imani Lounge's compliance with its wage obligations under the FLSA. As the Plaintiffs acknowledge, liability was disputed, documentary evidence was conflicting and, in some places, lacking, and the Imani Lounge's ability to fully fund a settlement according to the Plaintiffs' calculated damage demands was highly

questionable. And the Plaintiffs acknowledge that the proposed settlement is fair, reasonable, and just, although it represents a compromise of their claimed lost wages. As such, the Court finds that the settlement reflects a fair and reasonable resolution of the disputes between the parties.

The settlement also includes a component of attorneys' fees and costs, which was negotiated separately from the amount Plaintiffs are to receive under this settlement, and only after resolution of Plaintiffs' claims was reached. Thus, Plaintiffs' recovery has not been adversely affected by the amount of fees to be paid to their counsel. *See Schaffer v. Bridgeway Servs., LLC*, Case No. 2:20-cv-1361-JHE, 2022 WL 479411, at *3 (N.D. Ala. Feb. 16, 2022). Furthermore, the court finds the attorneys' fee sum to be fair and reasonable under the circumstances.

Accordingly, the settlement of the Plaintiffs' claims is approved.

### C. Attorneys' Fees Associated with this Motion

As part of the relief sought under the motion to enforce, Plaintiffs also seek their reasonable expenses and costs, including attorneys' fees. These include travel by Plaintiffs' counsel to attend the hearing (approximately twelve hours), research and drafting the motion (approximately seven to eight hours), preparation for the hearing (approximately one hour), attending the hearing (approximately one hour), and a round-trip plane ticket estimated to be between $300 to $400. A party seeking to recover attorneys' fees bears the burden of establishing their entitlement to fees and documenting the appropriate hours and hourly rates. *Gartman v. Brady*, No. 2:18-cv-534-MHT, 2022 WL 4000349, at *2 (M.D. Ala. Sept. 1, 2022) (quoting *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999)). As Plaintiffs cannot point the Court to any rule, statute, or contract term allowing for the recovery of such fees and expenses under these circumstances, Plaintiffs have not carried their burden. Accordingly, this request will be denied.

### III. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is **ORDERED** as follows:

1. Plaintiffs' *Motion to Enforce and Approve FLSA Collective Action Settlement* (doc. 72) is **GRANTED IN PART and DENIED IN PART**.
   a. The Court finds that a valid, enforceable settlement exists between the parties on the terms set out above and in the settlement agreement filed with the Court.
   b. The Court finds that the terms of the settlement are fair and reasonable and the settlement is therefore approved.
   c. To the extent that Plaintiffs seek reasonable expenses and costs, including attorneys' fees, associated with their motion, such award of fees and costs is **DENIED.**
2. The Plaintiffs shall file a notice with the Court on or by **July 26, 2024,** concerning the status of the settlement and, in particular, the status of the Defendants' payment obligations under it.

**DONE** on this the 12th day of June 2024.

/s/ R. Austin Huffaker, Jr.
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE